UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANDREW MACLACHLAN,

                Plaintiff,                Case No. 1:21-cv-461

v.                                 Honorable Paul L. Maloney

S.L. BURT et al.,

                Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder.  Fed. R. Civ. P. 21.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is further required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will drop Defendants Burgess, Goodspeed, Johnson, Bielas, Monroe, and Briske under Rule 21 because they are misjoined.  The Court will also dismiss Plaintiff's complaint for failure to state a claim against Defendants MDOC, Washington, Burt, Steward, Hill, West, Brown, Miller, Hayes, and Betts.  The Court will further deny without prejudice Plaintiff's pending motions.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility and the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  Plaintiff sues the MDOC[1] and its Director Heidi E. Washington.  Plaintiff further sues the following MCF employees:  Warden S.L. Burt; Deputy Warden Unknown Steward; Inspectors Unknown Kludy and Unknown Miller; Lieutenants Unknown Hayes and Unknown Hill; Sergeant Unknown Brown; Resident Unit Manager Unknown West; Prison Counselor Unknown Betts; and Emergency Response Team (ERT) Members Unknown Parties.[2]  Plaintiff also sues the following ECF employees:  Warden Unknown Burgess; Hearings Investigator Unknown Goodspeed; Prison Counselor Kendra Johnson; Correctional Officer Unknown Bielas; Health Care Manager Nikki Monroe; and Registered Nurse Unknown Briske.

Plaintiff alleges that on July 30, 2020, Defendant Unknown Parties—members of the MCF ERT—used excessive force against him.  According to the original complaint, earlier that evening, Plaintiff represented his block in a warden forum meeting with Defendant Burt to

---

[1] The complaint is not altogether clear whether Plaintiff intends to name the MDOC as a Defendant or if Plaintiff merely intends to identify that the MCF Emergency Response Team is part of the MDOC.  Plaintiff lists each on a separate line in his extended caption to the amended complaint (*see* Am. Compl., ECF No. 10, PageID.286) but omits the MDOC from his list of Defendants (*see id.*, PageID.288–290.)   Out of an abundance of caution, the Court will presume that Plaintiff intends to name the MDOC as a Defendant in this action.

[2] The MDOC is not the only Defendant that Plaintiff lists in the caption to the amended complaint but omits from the list of Defendants.  Defendants Hayes, Brown, and Betts likewise are named in the caption but remain absent from the list of Defendants.  As with the MDOC, the Court will presume that Plaintiff intends to name these three individuals as Defendants in this action.

discuss concerns with the prison's response to the COVID-19 pandemic.[3]  (Compl., ECF No. 1, PageID.10.)  When order broke down among the assembled prisoners, ERT arrived to quell the unrest.  Instead, the arrival of ERT allegedly agitated the prisoners further.  The prisoners were sent to their cells, but the tension remained high.

Plaintiff alleges that he spoke with Defendants Hill, Brown, and West, and West asked Plaintiff to assist in calming the prisoners on his block.  As a first step, West purportedly wanted Plaintiff to go from cell to cell.  West instructed Plaintiff to tell other prisoners that it was important that they stay in their cells, but they could leave their doors slightly ajar in order to provide air flow for some relief during the hot day.  Plaintiff agreed and began speaking with prisoners as West directed.

At some point while Plaintiff was carrying out Defendant West's plan, Defendant Hill saw Plaintiff and instructed ERT to detain him.  By that time, Plaintiff and West had progressed to the second level of cells on the block.  Plaintiff alleges that he complied with all of Hill's orders.  ERT members cuffed Plaintiff and took him to the Unit 4 dayroom.  Defendants Miller and West arrived at the dayroom and spoke with Plaintiff for more than 30 minutes about West's and Plaintiff's attempts to reduce tensions on the block.  During that time, Plaintiff also had his handcuffs removed.  At the end of the conversation, Miller instructed Plaintiff to recruit several other influential inmates and to continue working with West to defuse the tension on the unit.

Plaintiff followed Defendant West who picked four prisoners before returning to the dayroom.  Once there, Defendants Hill and West spoke to the five prisoners, including Plaintiff, before eventually dismissing them back to their cells.  After Plaintiff returned to his

---

[3] Although Plaintiff has since filed an amended complaint, his original complaint adds context to the conduct described in the amended complaint.

cell, Defendant Betts visited and thanked Plaintiff for his help.  During the next hour, Betts visited Plaintiff's cell several more times.  Plaintiff alleges that he remained calm and complied with all rules during these events.

After the unrest resolved, the ERT, including Defendants Unknown Parties, allegedly extracted Plaintiff from his cell.  The ERT rushed into Plaintiff's cell and yelled at him to get on the ground and to put his hands on his head.  Plaintiff alleges that he complied with those orders and posed no threat.  He further alleges that, notwithstanding his compliance, an ERT member slammed a riot shield into Plaintiff's face and nose, which forced Plaintiff's face to hit hard against the cell's tile floor.  ERT members placed Plaintiff in cuffs and restraints.  Plaintiff stated that ERT members were hurting him and that he was not resisting them.  During the extraction, an ERT member allegedly choked Plaintiff and pushed his head into the floor.  Plaintiff was transported out of MCF.  During the extraction, Plaintiff allegedly suffered injuries to his nose that exacerbated a pre-existing condition, and he waited several weeks for any treatment.  In a document Plaintiff attached to his original complaint, Plaintiff alleges that Defendants Burt and Kludy commanded ERT although only Kludy was present for the extraction.  (Ex. 1 Supp. Compl., ECF No. 1-1, PageID.74.)

Plaintiff was immediately transferred to ECF, but MCF personnel allegedly failed to properly transfer his property to ECF.  First, Plaintiff asserts that he received his property more than 30 days after he transferred.  When his property arrived, it was incomplete.  Plaintiff alleges that approximately $400.00 worth of personal property was missing.  Defendant Johnson instructed Plaintiff that he should complete a property claim form.  He did, but at the time he filed his amended complaint, he had not received any compensation for his lost property.

4

The remainder of Plaintiff's allegations describe conduct at ECF.  Plaintiff asked for medical attention when he arrived at ECF both for the injuries he allegedly received during his extraction and for his pre-existing health conditions, but his request was denied.  Plaintiff requested medical attention, including for his respiratory functioning, several more times over the subsequent weeks.  Most of Plaintiff's requests were denied or he believes he did not receive adequate care.   Medical personnel granted at least one request and provided Plaintiff replacements for his "keep-on-person" medications that were removed from his possession when he transferred to ECF.  Several months after Plaintiff began requesting medical services, on October 22, 2020, Dr. Harry Borovik (not a party) performed surgery on Plaintiff to treat multiple issues with his sinuses.

When Plaintiff arrived at ECF, he was sent to administrative segregation and charged with a misconduct for inciting the MCF riot.  While his charges remained pending, Defendants Johnson and Goodspeed allegedly refused to meet with Plaintiff within an appropriate period to assist with his defense.  The hearing officer found Plaintiff guilty of the misconduct charge.

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages.

## II.    Misjoinder

Plaintiff's allegations describe a series of discrete events, and his action joins 18 Defendants from the MDOC administrative office and 2 prisons.  At this juncture, the Court must review whether Plaintiff's claims are properly joined.

### A.    Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule

20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted).  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are

6

related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions.  Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim.  Courts are obligated to reject misjoined complaints like Plaintiff's.  *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Therefore, the Court will look to the first named Defendant and the earliest clear factual allegations involving that Defendant to determine which portion of the action should be

considered related.  Plaintiff names Defendant Burt as the first Defendant in the caption of the amended complaint (Am. Compl., ECF No. 10, PageID.286) and in the list of Defendants (*id.*, PageID.288).  Plaintiff's earliest factual allegations involving Burt that give rise to a claim asserting that she supervised the ERT extraction.  This and Burt's denial of grievances are Plaintiff's only allegations involving her.  The earliest allegation giving rise to a claim involves only the MCF Defendants, and purportedly, the MDOC and Defendant Washington**.**  It is clear that no question of law or fact is common to all Defendants.  *See* Fed. R. Civ. P. 20(a)(2)(B).  Plaintiff has, therefore, improperly joined the ECF Defendants:  Burgess, Goodspeed, Johnson, Bielas, Monroe, and Briske.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined multiple Defendants to this action, the Court must determine an appropriate remedy.  Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."  *Id.*  Instead, Rule 21 provides two remedial options:  (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").  "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing

the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845.  Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice.  *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983.  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling.  The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted.  *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (1999) . . . .  This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available."  For

> this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)).  The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597.  Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges that the ECF Defendants engaged in conduct no earlier than July 2020.  Plaintiff has sufficient time in his limitations period to file a new complaint or new complaints against any dismissed Defendants.  Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 to dismiss without prejudice the claims against the ECF Defendants:  Burgess, Goodspeed, Johnson, Bielas, Monroe, and Briske.  *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).  If Plaintiff wishes to proceed with his claims against the dismissed Defendants, he shall do so by filing new civil

actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[4]

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

---

[4] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another.  The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.    Immunity

The complaint is not altogether clear whether Plaintiff intends to bring his action against the MDOC and against the ERT as an entity.  To the extent that he intends this, Plaintiff may not maintain a § 1983 action against either the MDOC or the ERT, which itself is a division of the MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).  In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See*

*Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.  Therefore, the Court dismisses the MDOC and the ERT insofar as Plaintiff names them as Defendants.

## V.        Respondeat Superior

Plaintiff fails to make specific factual allegations against Defendants Washington, Burt, and Steward, other than his claims that they supervised MCF personnel and that they denied his grievances. To the extent Plaintiff contends that Burt commanded ERT, Plaintiff fails to name Burt as one of the individuals present during the extraction.  Plaintiff's allegations related to Burt suggest that she did nothing more than to order his extraction.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Washington, Burt, and Steward engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

14

## VI.     Eighth Amendment

Plaintiff alleges that ERT members—Defendants Unknown Parties—and Defendants Kludy, Miller, West, Hayes, Betts, Hill, and Brown used excessive force against when they extracted him from his cell and transferred him to ECF.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).   Generally, restrictions and even harsh

conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Upon initial review, the Court concludes that Plaintiff has alleged facts sufficient to state an Eighth Amendment claim for excessive force against Defendants Kludy and Unknown Parties. However, no other Defendant actively engaged with Plaintiff during the alleged use of excessive force. Defendant Hill allegedly ordered ERT to detain Plaintiff, but the allegations fail to suggest that the order was anything but a "good-faith effort to maintain or restore discipline . . . ." *Hudson*, 503 U.S. at 7. Defendants West, Brown, Miller, Hayes, and Betts merely spoke with Plaintiff in the minutes or hours before his extraction or they were in the vicinity of his cell during the extraction. This conduct falls far short of violating the Eighth Amendment. The Court therefore will dismiss Plaintiff's Eighth Amendment claims against Defendants Hill, West, Brown, Miller, Hayes, and Betts because Plaintiff fails to state a claim against them.

16

## VII.    Fourteenth Amendment

Plaintiff next contends that he lost approximately $400.00 worth of his personal property in violation of his due process rights because unspecified MCF individuals failed to properly guard and pack his belongings after Plaintiff's extraction.  Even if Plaintiff specified the individuals responsible, which he does not, his due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively,

Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim for the loss his property will be dismissed.

## VIII.   Pending motions

Plaintiff also has filed two motions seeking appointment of counsel that remain pending before the Court. (ECF Nos. 3, 6.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Therefore, the Court will deny without prejudice to renewal after mediation Plaintiff's requests for appointment of counsel (ECF Nos. 3, 6).

**<u>Conclusion</u>**

Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that the ECF Defendants—Burgess, Goodspeed, Johnson, Bielas, Monroe, and Briske—are misjoined in this action.  The Court will dismiss without prejudice the claims against them.  Having further conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Washington, Burt, Steward, Hill, West, Brown, Miller, Hayes, and Betts will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process claims.  Plaintiff's Eighth Amendment claims against Defendants Kludy and Unknown Parties remain in the case.  The Court will further deny without prejudice Plaintiff's pending motions to appoint counsel.

An order consistent with this opinion will be entered.

Dated:   January 7, 2022                              /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge