UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW MACLACHLAN,

    Plaintiff,

v.

S. L. BURT, *et al.*,

    Defendants.
_____/

Case No. 1:21-cv-461

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

Plaintiff Andrew MacLachlan, acting *pro se*, filed this prisoner civil rights action on June 7, 2021. *See* Compl. (ECF No. 1). Plaintiff later filed an amended complaint (ECF No. 10), which is the operative pleading in this case. The gist of plaintiff's claim is that on July 30, 2020, members of the Muskegon Correctional Facility (MCF) Emergency Response Team (ERT) used excessive force against him contrary to the Eighth Amendment. *See* Opinion (ECF No. 11, PageID.306, 319-320). The Court dismissed all defendants except for MCF Inspector John Kludy and the unknown members of the MCF ERT. *See* Opinion at PageID.323; Order (ECF No. 12). Plaintiff sued Inspector Kludy and the unknown members of the MCF ERT in both their official and personal capacities. *See* Amend. Compl. at PageID.288. Discovery closed on December 1, 2022. *See* Case Management Order (ECF No. 22). Inspector Kludy filed a timely motion for summary judgment on December 29, 2022 (ECF No. 23).[1] Plaintiff has never identified the unknown members of the MCF ERT.

---

[1] The Court notes that defendant's counsel unilaterally changed the defendants on the caption from "S. L. Burt, *et al.*" to "John Kludy." Defendant's counsel is reminded that this type of unilateral action confuses the record.

1

On May 16, 2023, several months after defendant filed the motion for summary judgment, Attorney Angelle M. Rothis entered an appearance on behalf of plaintiff. The Court allowed plaintiff's counsel to file a response to defendant's motion for summary judgment. In a recent motion, plaintiff's counsel clarified that, "'This case arises from an extraction of the Plaintiff ANDREW MACACHLAN from his prison cell, which extraction allegedly used excessive force' and that '[t]he only remaining cause of action in this case is against Defendant Kludy for an alleged violation of the 8th Amendment of the Constitution.'" Motion (ECF No. 29, PageID.434). The Court construes this clarification by plaintiff's counsel as a withdrawal of his claims against the unnamed members of the MCF ERT.[2] This matter is now before the Court on defendant Inspector Kludy's motion for summary judgment (ECF No. 23) and defendant's related motion to strike the affidavit of prisoner Donald Bromley (ECF No. 39).

### I.  Defendant Kludy's motion for summary judgment

### A.  Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[2] If plaintiff had not withdrawn the claims against the MCF ERT members, the undersigned would recommend dismissal of these claims for lack of prosecution because plaintiff has never identified these unnamed defendants.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The Court characterized plaintiff's claim against Inspector Kludy as an Eighth Amendment violation, *i.e.*, that Kludy used excessive force when in extracting plaintiff from his cell and transferring him to Oaks Correctional Facility (ERF):

> The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345- 46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id*.
>
> This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

*Id*. at PageID.319-320.

## II. Discussion

### A. Official capacity claim

A lawsuit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Sixth Circuit has specifically held that the MDOC is immune from a § 1983 suit under the Eleventh Amendment. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 Fed. Appx. 646, 653-54 (6th Cir. 2010). Accordingly, Inspector Kludy's motion for summary judgment should be granted as to this claim.

### B. Personal capacity claim

Inspector Kludy points out that plaintiff alleged virtually no wrongful conduct involving him. In this regard, the Court's screening opinion identified only one claim:

> In a document Plaintiff attached to his original complaint, Plaintiff alleges that Defendants Burt and Kludy commanded ERT although only Kludy was present for the extraction. (Ex. 1 Supp. Compl., ECF No. 1-1, PageID.74.)

5

Opinion (ECF No. 11, PageID.308).[3]

In addressing pre-trial motions, the undersigned summarized plaintiff's Eighth Amendment claim against Inspector Kludy based on plaintiff's deposition testimony:

> Plaintiff's claim against defendant Inspector Kludy arises from the ERT's actions on July 30, 2020.  Plaintiff testified: that the ERT used tear gas when the prisoners were peacefully refusing to return to their cells (MacLachlan Dep. (ECF No. 24-2, PageID.397-399)) [FN 2]; that plaintiff assisted former defendant RUM West (sometimes referred to as "Best") by unlocking cell doors ("I had permission from the resident unit manager to basically tell inmates to stay in, but you can leave your doors cracked") (*id*. at PageID.397-400); that a second ERT came to the unit which was told to cuff plaintiff because he was unlocking doors (*id*.); that plaintiff was placed in a day room where RUM West and former defendant Inspector Miller questioned him on how to resolve the current situation (*id*. at PageID.400); that after speaking with prison staff, plaintiff returned to his cell and was no longer being detained (*id*. at PageID.400-401); that when the ERT came back into the unit, plaintiff closed his cell door, and the ERT came into the cell where "they started screaming and yelling for me to get on the ground and put my hands behind my head and put my knees on the ground and face away" (*id*. at PageID.402); that plaintiff put his hands up and that he was helping the inspector mediate the situation (*id*.); the ERT told plaintiff to get on his knees and put his hands on his head (*id*.); plaintiff said he was not resisting and complied with the order, but he was slammed down with his face hitting the floor (*id*. at PageID.402-403); and the ERT extracted plaintiff during which time they grabbed the back of his neck, choked him, punched his face, "kind of hit [his] shoulder" with a riot shield, and placed him in leg shackles (*id*. at PageID.403-404).
>
> Plaintiff testified that defendant Kludy was about 50 yards from his cell when the ERT extracted him:
>
>> Q Okay. When the ERT was outside your cell and telling you to get on the ground, where was Inspector Kludy?
>>
>> A Now, my knowledge, Inspector Kludy was outside of the unit by the trees about, I would say, maybe 50 yards from the door, if I can,

---

[3] In the response to the motion summary judgment, plaintiff through his counsel, appears to raise a new claim that he "was deprived of medical care contrary to his 8th Amendment rights" because: he has upper respiratory issues; he is on daily asthma medications; "[h]e felt the tear gas hurting him since before the extraction began"; and, "requested to see medical for a breathing treatment and was denied and told they could not treat him."   Plaintiff's Response (ECF No. 32, PageID.473).   Plaintiff's new claim is not part of this lawsuit.

6

>   you know, estimate. He was not in the unit during the extraction, and I'm sure that would pop up on the videocamera footage as well.

MacLachlan Dep. at PageID.404.  In this regard, plaintiff testified that Inspector Kludy ordered the ERT to extract him.  *Id*. at PageID.405.  When asked, "who told you that?" plaintiff responded:

>   A. That's just -- honestly, I was -- we were told that. One of the guys that also was transferred with me, he was told that by the other inspector, Inspector Miller, that it wasn't a decision that came from him. It came from the deputy warden and Kludy was the one to tell the ERT team to extract us.
>
>   Q Okay. But Kludy wasn't part of the ERT?
>
>   A No, he just oversees it. He basically tells them what to do.

*Id*.

[FN 2 The Court notes that plaintiff was found guilty of a Class I Misconduct ("Incite to Riot or Strike; Rioting or Striking") related to the July 30, 2020 incident. See Class I Misconduct Hearing Report (ECF No. 24-2, PageID.416-418).]

Order (ECF No. 31, PageID.462-463).

Inspector Kludy is entitled to summary judgment because he was not involved in plaintiff's cell extraction.  "Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011).  "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions."  *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999).  Plaintiff's deposition testimony established that Inspector Kludy was about 50 yards away and outside of the unit when the MCF ERT extracted him from his cell.  Plaintiff's only evidence linking Inspector Kludy to the incident is multiple hearsay, *i.e.*, an inmate told plaintiff that another inmate told him that Inspector Miller told the other inmate that "the deputy warden and Kludy was the one [sic] to tell the ERT team to extract us."  MacLachlan Dep. at PageID.405.  "Hearsay evidence may not be considered on

7

summary judgment." *Jacklyn v. Schering-Plough Healthcare Products Sales Corporation*, 176 F.3d 921, 927 (6th Cir. 1999). *See Livingston Christian Schools v. Genoa Charter Township*, 858 F.3d 996, 1008 (6th Cir. 2017) (statements in an affidavit that amount to hearsay cannot be considered at the summary judgment stage) (citing *Alpert v. United States*, 481 F.3d 404, 408-09 (6th Cir. 2007).

In his response, and contrary to his deposition testimony, plaintiff now contends that Inspector Kludy was "present" at the extraction. This new position is based on the affidavit of plaintiff's cellmate, prisoner Donald Bottomley. As discussed, this affidavit is the subject of a motion to strike filed by defendant on the basis that it was submitted in bad faith contrary to Fed. R. Civ. P. 56(h) (ECF No. 39). The gist of defendant's motion to strike is that plaintiff's counsel recognized that plaintiff had to prove that Inspector Kludy was personally involved in the extraction and coached prisoner Bottomley to execute an affidavit which either placed defendant Kludy at plaintiff's cell or vague enough to infer that Kludy was at the cell.

As an initial matter, defendant refers to recorded telephone conversations from the prison between plaintiff's counsel and prisoner Bottomley which included the following:

Q. Okay, listen, in case we get cut off let me ask you a couple of key questions, okay?

A. Okay, yup.

Q. At the time of the excessive force was Inspector Kludy in the room?

A. Inspector Kludy? No, he was outside -- he was in the unit, he wasn't in the room. The only person that was in the room when all this happened was Sergeant --oh, I can't think of his name. And then there was two officers at the door with the riot gear on and then there was a Mexican, I'd know his name if I heard it, it's a heavy set Mexican, that's the one that hit him in the back of the head with the shield.

8

> Q. A Mexican. Oh, shoot, I'm trying to think of these names that I've read. I don't think I remember a Mexican name. Now Kludy was in the unit, where in the unit?
>
> A. I believe he was up -- I believe he was up front like up by the doorway, the door, up at like the entrance of the unit, somewhere up in that vicinity of the area. It was all –
>
> Q. I –
>
> A. All administration was up front at the desk, right around the desk area, I mean –
>
> Q. How far -- how far is the desk from the cell?
>
> A. Probably about seven cells, I'd say, 'cause I think we were in 1- --
>
> Q. How much?
>
> A. We were in 124, so I'd say about seven cells.
>
> Q. **Now, it would be good if you weren't sure where Kludy was. We need him to be in the room. It's not enough that he ordered this or directed, he needs to participate in it. And he himself made a statement and signed it that he witnessed everything. I'll read it to you.** And -- huh?

Telephone Transcript (ECF No. 42-1, PageID.616-617) (emphasis added).[4]

Plaintiff also relies on two documents filed in grievance MCF-20-18-1280-17Z ("1280"). *See* Exhs. (ECF Nos. 32-3 and 32-4). Inspector Kludy responded to grievance 1280 (Step I) (ECF No. 1-1, PageID.76) which involved plaintiff's claim that he was taken into custody by MCF ERT with excessive force. Kludy summarized plaintiff's complaint in the grievance as follows:

> During a disturbance in housing unit #4, Inmate MacLachlan #844474 is stating he was hit in the back and shoulder with the riot shield, punched in the fact, and was choked by the back of his neck. Inmate MacLachlan is also claiming he had excessive force used against him.

---

[4] The Court notes that the telephone transcript (Exhibit C) was erroneously omitted from defendant's supporting brief and appears as Exhibit C (ECF No. 42-1) attached the "Errata" (ECF No. 42).

9

Grievance 1280 (ECF No. 32-4, PageID.496).

Kludy provided the following investigation summary:

On 7-30-20, Inmate MacLachlan was take to segregation after attempting to incite a riot.  After speaking to staff involved in the extraction, cuffing, and escort, as well as being present during this incident. [sic]   There was nothing identified or reported in the incident that could be considered as excessive force.  Restraining and escorting techniques used were according and carried out as trained to keep staff and inmates safe during a disturbance.

*Id*.

Finally, Inspector Kludy provided the following decision:

Do [sic] to multiple witnesses being present, including myself, that witnessed or participated in this incident, it is determined the appropriate use of force was used to control the situation you were in.    Grievance denied.

*Id*.

Warden S.L. Burt denied plaintiff's appeal at Step II.    *Id*. at PageID.497.    In his Step II appeal (which was not filed with plaintiff's response), plaintiff explicitly stated that Kludy was not present during the extraction:

Also, the inspector (Kludy) says he was present during the extraction is false.    He was outside and was not inside the building/unit when I was assaulted.

*Id*. (ECF No. 1-1, PageID.79).    In denying the Step II appeal, Warden Burt stated:

At Step II, Grievant reasserts the allegations reported at Step I.    Grievant contends there was no video camera or footage recorded at the time of the extraction.    Grievant states Inspector Kludy was outside and did not see him being assaulted.    The investigation found that multiple people were on the scene and witnessed what took place.    After the interview of the witnesses it was determined the appropriate control technique was used.

*Id*. (ECF No. 32-4, PageID.497).

Ultimately, prisoner Bottomley signed an affidavit prepared by plaintiff's counsel. *See* Plaintiff's Response (ECF No. 43-1, PageID.646). Prisoner Bottomley's affidavit contradicted

10

plaintiff's deposition testimony and the facts set forth in plaintiff's grievance 1280 with respect to Inspector Kludy's whereabouts during the incident:

> 3. On July 30, 2020 I was cell mates with Andrew MacLachlan at Muskegon Correctional Facility.
>
> 4. On July 30, 2020 Andrew was extracted from our cell, and I was present and viewed and heard the entire extraction.
>
> 5. Personnel came forcefully into our room and told Andrew to get on his knees, which he did.
>
> 6. Andrew was told he was being extracted. He did not resist.
>
> 7. They proceeded to hit and beat on him, including pushing his face into the floor causing him to bleed a lot.
>
> 8. At one point I tried to jump on the person who was beating Andrew.
>
> 9. At no time did Andrew resist or be uncooperative.
>
> 10. Inspector John Kludy was present at all times during this extraction of Andrew.
>
> 11. Inspector Kludy ordered and directed the persons to conduct the extraction.
>
> 12. Inspector Kludy ordered the extraction and never commanded that the excessive force used be reduced.
>
> 13. The force was clearly excessive for the situation in which Andrew did not resist.
>
> 14. There was an adult man standing at the doorway and he video-taped the whole extraction from beginning to end.
>
> 15. It is my opinion that Andrew may not have seen Kludy because he was face down getting beat up.

Bottomley Aff. (ECF No. 32-3, PageID.493-494).

As discussed, Inspector Kludy seeks to strike this affidavit because it was submitted in bad faith. Fed. R. Civ. P. 56(h) provides as follows:

11

> **Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

"[A]n order to pay expenses pursuant to Rule 56(h) requires a finding of 'bad faith,' which courts have found only when the attorney's conduct is 'egregious,' such as 'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case.'" *Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012), quoting *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1998). Stated another way, "[b]ad faith may be found when an attorney's actions are 'so completely without merit . . . that they must have been undertaken for some improper purpose.'" *Jimenez v. City of New York*, 666 Fed. Appx. 39, 41 (2d Cir. 2016) (summary order), quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999). However, sanctions should not be granted when the affidavit did not prejudice the opposing party, *i.e.*, when the court did not rely on the affidavit in deciding the motion for summary judgment. *See Sutton v. United States Small Business Administration*, 92 Fed. Appx. 112, 117-18 (6th Cir. 2003).

Here, it appears to the Court that plaintiff's counsel coached prisoner Bottomley to change his original recitation of the facts, prepared an affidavit which referred to Inspector Kludy as "present" rather than at the front desk area (as Bottomley original stated), and secured Bottomley's signature to the affidavit. In the Court's opinion, Bottomley's affidavit omitted facts concerning issues central to the resolution of the case, *i.e.*, exactly where was Inspector Kludy during the cell extraction? Rather than accepting Bottomley's recitation, plaintiff's counsel coached Bottomley to be vague, *i.e.*, "it would be good if you weren't sure where Kludy was" and

12

"[w]e need him to be in the room."   From the Court's perspective, such an affidavit would allow plaintiff to argue that Kludy was "present" at the incident, despite plaintiff's statements that Kludy was not in the unit and not present.   *See* Plaintiff's deposition testimony ("Inspector Kludy was outside of the unit . . . maybe 50 yards from the door . . . He was not in the unit during the extraction") (PageID.404); Plaintiff's grievance appeal ("[T]he inspector (Kludy) says he was present during the extraction is false.   He was outside and was not inside the building/unit when I was assaulted.") (PageID.79).

Given this record, plaintiff's counsel's actions appear calculated to produce an incomplete or misleading affidavit. While counsel's actions are not to be condoned, the Court concludes that defendants have not demonstrated bad faith under Fed. R. Civ. P. 56(h). First, prisoner Bottomley willingly signed the affidavit prepared by counsel[5] and is accountable for his actions if the affidavit proves to be false.[6]   Second, for the reasons discussed below, the Bottomley affidavit does not prejudice Inspector Kludy because it does not establish any relevant

---

[5] Plaintiff presented the following JPay messages sent by his counsel to prisoner Bottomley:

> "Hi Mr. Bottomley Will you please read the attached Affidavit and tell me if it is accurate?   And write me back anything which i [sic] may have forgotten
>
> Thank You.   I will overnight this for your signature.   It is very important you get it back to me ASAP please!! If you get is [sic] please call me ASAP
>
> If this is entirely accurate and nothing needs to be added, please sign, notarize and attach it back to me or mail ASAP!!"

Plaintiff's Response at PageID.646; JPay message (ECF No. 40-2, PageID.532).   Prisoner Bottomley returned the signed affidavit on June 26, 2023.   JPay message at PageID.532.

[6] As the Michigan Supreme Court observed in *Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930), "[a] purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all".  See also, *United States v. Lee*, 359 F.3d 412, 419 (6th Cir. 2004) ("a perjury charge pursuant to 18 U.S.C. § 1623 has four elements: (1) knowingly made; (2) a materially false declaration; (3) under oath; (4) in a proceeding before or ancillary to any court of the United States.").

facts for purposes of the motion for summary judgment. For these reasons, the Court concludes that Inspector Kludy's motion to strike the affidavit (ECF No. 39) should be denied.

As discussed, prisoner Bottomley's affidavit is not a factor in deciding Inspector Kludy's motion for summary judgment. Bottomley's affidavit is so vague as to Kludy's whereabouts that it does not establish that Kludy had any personal involvement. In this regard, Bottomley does not clarify what he meant by "John Kludy was present at all times".[7] In addition, Bottomley provides no factual basis to support his conclusory statements that "Inspector Kludy ordered and directed the persons to conduct the extraction" or that "Inspector Kludy ordered the extraction and never commanded that the excessive force used be reduced." Affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment. *Sigmon v. Appalachian Coal Properties, Inc.*, 400 Fed. Appx, 43, 49 (6th Cir. 2010). *See Stine v. State Farm Fire & Casualty Company*, 428 Fed. Appx. 549, 550 (6th Cir. 2011) (a "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment"). Based on this record, while there is evidence that Inspector Kludy witnessed the riot and the incident involving plaintiff,

---

[7] This is not surprising. It appears that the term "present" was lifted out of Inspector Kludy's grievance response:

"A. -- the two officers that were at the door, there was two administrators behind him [sic]. I'm just trying to remem- -- I'm just trying to --

Q. Yeah, I think Kludy was one of them. Listen to what he writes on his answer to a grievance. This is Kludy.

A. Yeah.

Q. Okay. Due to multiple witnesses being present including myself that witnessed or participated in this incident, it is determined the appropriate use of force was used, of course, to control the situation. So he admits that he was there. . ."

Telephone Trans. at PageID.617-618.

14

there is no evidence that Kludy had personal involvement with the alleged use of excessive force against plaintiff.

Finally, plaintiff suggests that Inspector Kludy should be liable on a theory of respondeat superior. "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it must be based on active unconstitutional behavior." *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (internal quotation marks omitted). Here, plaintiff must demonstrate that Inspector Kludy encouraged or condoned the actions of the unnamed MCF ERC member(s) who allegedly used excessive force against plaintiff. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Here, plaintiff has failed to provide such evidence. As discussed, plaintiff has established that Inspector Kludy witnessed the events from perhaps 50 yards away. In this regard, plaintiff stated in his grievance appeal that Kludy "was not inside the building/unit when I was assaulted." Grievance 1280 at PageID.79. Accordingly, Inspector Kludy's motion for summary judgment should be granted as to this claim.[8]

### III. Recommendation

Accordingly, I respectfully recommend that defendant Kludy's motion to strike the Bottomley Affidavit (ECF No. 39) be **DENIED**.

I further recommend that defendant Kludy's motion for summary judgment (ECF No. 23) be **GRANTED**.

---

[8] The Court notes that Inspector Kludy included a conclusory claim for qualified immunity which consisted of the legal standard and a one-sentence argument, "For the reasons stated in the arguments above, Kludy is entitled to qualified immunity because MacLachlan has not demonstrated that Kludy violated any of his clearly established constitutional rights." *See* Defendant's Brief at PageID.380. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

I further recommend that the unnamed and unserved members of the MCF Emergency Response Team be **DISMISSED**.

I further recommend that this action be **TERMINATED**.


Dated: August 31, 2023                          /s/ Ray Kent
                                                RAY KENT
                                                United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).